**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

|  |  |  |
|---|---|---|
| **THOMAS PAUL BOLAND,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **CIVIL NO. 3:08CV798** |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

### REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

This matter is before the Court for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) on cross motions for summary judgment.[1] Plaintiff, Thomas Paul Boland, seeks judicial review pursuant to 42 U.S.C. § 405(g) of the final decision of Defendant Commissioner denying his application for Social Security Disability (DIB) and Supplemental Security Income payments (SSI). The Commissioner's final decision is based on a finding by the Administrative Law Judge (ALJ) that Plaintiff was not disabled as defined by the Social Security Act (the Act) and applicable regulations.

For the reasons discussed below, it is the Court's recommendation that Plaintiff's motion for summary judgment (docket entry no. 11) and motion for remand (docket entry no. 12) be

---

[1] The administrative record in this case has been filed under seal, pursuant to Local Civil Rules 5 and 7(C). In accordance with these rules, the Court will endeavor to exclude any personal identifiers such as Plaintiff's social security number, the names of any minor children, dates of birth (except for year of birth), and any financial account numbers from its consideration of Plaintiff's arguments and will further restrict its discussion of Plaintiff's medical information to the extent necessary to properly analyze the case.

DENIED; that Defendant's motion for summary judgment (docket entry no. 15) be GRANTED; and that the final decision of the Commissioner be AFFIRMED.

## I. PROCEDURAL HISTORY

Plaintiff protectively filed for SSI on May 02, 2005 and DIB on June 29, 2006, claiming disability due to bipolar disorder, depression, and low back pain, with an alleged onset date of May 19, 2004. (R. at 84, 87, 99, 104.) The Social Security Administration ("SSA") denied Plaintiff's claims initially and on reconsideration.[2] (R. 52-54; 56-57.) Plaintiff requested a hearing that was initially scheduled for February 15, 2008; however Plaintiff failed to appear at the scheduled hearing. (R. at 45-47, 60, 65-71.) Thereafter, Plaintiff submitted evidence to the ALJ that the ALJ accepted as good cause for Plaintiff's nonappearance, and the hearing was rescheduled. (R. at 72-74, 75-81.) On May 16, 2008, accompanied by counsel, Plaintiff testified before the ALJ. (R. at 22-44.) On June 17, 2008, the ALJ denied Plaintiff's application, finding that he was not disabled under the Act where, given the Plaintiff's age, education, work experience and residual functional capacity, there were jobs that existed in significant numbers in the national economy that he was capable of performing. (R. at 6-21.) The Appeals Council subsequently denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner subject to judicial review by this Court. (R. at 1-4.)

## II. QUESTION PRESENTED

Is the Commissioner's decision that Plaintiff is not entitled to benefits supported by substantial evidence on the record and the application of the correct legal standard?

---

[2] Initial and reconsideration reviews in Virginia are performed by an agency of the state government – The Disability Determination Services (DDS), a division of the Virginia Department of Rehabilitative Services – under arrangement with the SSA. 20 C.F.R. Part 404, Subpart Q; see also 404.1503. Hearings before administrative law judges and subsequent proceedings are conducted by personnel of the federal SSA.

### III. STANDARD OF REVIEW

In reviewing the Commissioner's decision to deny benefits, the Court is limited to determining whether the Commissioner's decision was supported by substantial evidence on the record and whether the proper legal standards were applied in evaluating the evidence. Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is more than a scintilla, less than preponderance, and is the kind of relevant evidence a reasonable mind could accept as adequate to support a conclusion. Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (citing Richardson v. Perales, 401 U.S. 389, 401 (1971); Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)).

In order to find whether substantial evidence exists, the Court is required to examine the record as a whole, but it may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (quoting Craig, 76 F.3d at 589). In considering the decision of the Commissioner based on the record as a whole, the Court must "take into account whatever in the record fairly detracts from its weight." Breeden v. Weinberger, 493 F.2d 1002, 1007 (4th Cir. 1974) (quoting Universal Camera Corp. v. N.L.R.B., 340 U.S. 474, 478 (1951)). The Commissioner's findings as to any fact, if the findings are supported by substantial evidence, are conclusive and must be affirmed. Perales, 402 U.S. at 390. While the standard is high, if the ALJ's determination is not supported by substantial evidence on the record, or if the ALJ has made an error of law, the district court must reverse the decision. Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987).

A sequential evaluation of a claimant's work and medical history is required in order to determine if a claimant is eligible for benefits. 20 C.F.R. §§ 416.920, 4041.1520; Mastro, 270

F.3d at 177. The analysis is conducted for the Commissioner by the ALJ, and it is that process that a court must examine on appeal to determine whether the correct legal standards were applied and whether the resulting decision of the Commissioner is supported by substantial evidence on the record.

The first step in the sequence is to determine whether the claimant was working at the time of the application and, if so, whether the work constituted "substantial gainful activity" (SGA).[3] 20 C.F.R. §§ 416.920(b), 404.1520(b). If a claimant's work constitutes SGA, the analysis ends and the claimant must be found "not disabled," regardless of any medical condition. Id. If the claimant established that he did not engage in SGA, the second step of the analysis requires her to prove that he has "a severe impairment…or combination of impairments which significantly limit[s] [her] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c); See also 20 C.F.R. § 404.1520(c). In order to qualify as severe impairment that entitles one to benefits under the Act, it must cause more than a minimal effect on one's ability to function. 20 C.F.R. § 404.1520(c). At the third step, if the claimant has an impairment that meets or equals an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (listing of impairments) and lasts, or is expected to last, for twelve months or result in death, it constitutes a qualifying impairment and the analysis ends. 20 C.F.R. §§ 416.920(d), 404.1520(d). If the impairment does not met or equal a listed impairment, then the evaluation proceeds to the fourth step in which the ALJ is required to determine whether the claimant can return to his past

---

[3] SGA is work that is both substantial and gainful as defined by the Agency in the C.F.R. Substantial work activity is "work activity that involves doing significant physical or mental activities. Your work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before." 20 C.F.R. § 404.1572(a). Gainful work activity is work activity done for "pay or profit, whether or not a profit is realized." 20 C.F.R. § 404.1572(b). Taking care of oneself, performing household tasks or hobbies, therapy or school attendance, and the like, are not generally considered substantial gainful activates. 20 C.F.R. § 4041572(c).

4

relevant work[4] based on an assessment of the claimant's residual functional capacity (RFC)[5] and the "physical and mental demands of work [the claimant] has done in the past." 20 C.F.R. §§ 416.920(e), 404.1520(e). If such work can be performed, then benefits will not be awarded. Id. However, if the claimant cannot perform his past work, the burden shifts to the Commissioner at the fifth step to show that, considering the claimant's age, education, work experience, and RFC, the claimant is capable of performing other work that is available in significant numbers in the national economy. 20 C.F.R. §§ 416.920(f), 404.1520(f); Powers v. Apfel, 207 F.3d 431, 436 (7th Cir. 2000) (citing Bowen v. Yuckert, 482 U.S. 137, 146, n.5 (1987)); Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The Commissioner can carry his burden in the final step with the testimony of a vocational expert (VE). When a VE is called to testify, the ALJ's function is to pose hypothetical questions that accurately represent the claimant's RFC based on all evidence on record and a fair description of all the claimant's impairment so that the VE can offer testimony about any jobs existing in the national economy that the claimant can perform. Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989). Only when the hypothetical posed represents all of the claimant's substantiated impairments will the testimony of the VE be "relevant or helpful." Id. If the ALJ finds that the claimant is not capable of SGA, then the claimant is found to be disabled and is accordingly entitled to benefits. 20 C.F.R. §§ 416.920(f)(1), 404.1529(f)(1).

---

[4] Past relevant work is defined as SGA in the past fifteen year that lasted long enough for an individual to learn the basic job functions involved. 20 C.F.R. §§ 416.965(a), 404.1565(a).

[5] RFC is defined as "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR-96-8p. When assessing the RFC, the adjudicator must discuss the individual's ability to perform sustained work activates in an ordinary work setting on a regular and continuing basis (i.e.; 8 hours a day, 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. Id. (footnote omitted).

## VI. ANALYSIS

The ALJ found at step one that Plaintiff had not engaged in SGA since the alleged onset of his disability. (R. at 11.) At steps two and three, the ALJ found that Plaintiff had the severe impairments of major depressive disorder and alcohol abuse in partial remission, but that these impairments did not meet or equal any listing in 20 C.F.R. Part 404, Subpart P, Appendix 1, as required for the award of benefits at that stage. (R. at 14.) The ALJ next determined that Plaintiff had the RFC "to perform medium work as defined in 20 C.F.R. §§ 404.1567(c) and 416.967(c) except that he would be limited to simple, unskilled work not requiring more than limited contact with the general public." (R. at 15.) Although the ALJ did not find that Plaintiff suffered from any physical limitations, the ALJ did determine that Plaintiff's alcohol abuse and "residual fatigue" resulted in exertional limitations that would still limit him to medium work. (R. at 19.) Nonexertionally, the ALJ found that Plaintiff was able to carry out simple job instructions, but he also accepted an examining psychologist's assessment that Plaintiff was "extremely withdrawn," finding that he would be limited to jobs that required little contact with the general public. (R. at 19.)

The ALJ then determined at step four of the analysis that Plaintiff was unable to perform any of his past relevant work as an electrician or electrical apprentice because Plaintiff was limited to simple, unskilled work. (R. at 19.) At step five, when the burden shifted to the Commissioner to show that the claimant was capable of performing other work that is available in significant numbers in the national economy (20 C.F.R. §§ 416.920(f), 404.1520(f); Powers v. Apfel, 207 F.3d 431, 436 (7th Cir. 2000) (citing Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987)); Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981)), the ALJ found that Plaintiff could perform "the mental activities generally required by competitive work activity, including the

6

ability to understand, remember and carry out simple job instructions and the capacity to respond appropriately to supervisors and coworkers." (R. at 20.) Accordingly, the ALJ concluded that plaintiff was not disabled and was employable such that he was not entitled to benefits.

Plaintiff moves for a finding that he is entitled to benefits as a matter of law, or in the alternative, he seeks reversal and remand for additional administrative proceedings. (Pl.'s Mot. Summ. J. at 1; Pl.'s Mot. Remand at 1.) In support of his position, Plaintiff argues that: (1) the ALJ improperly denied benefits by applying the Medical-Vocational Guidelines to a nonexertional impairment; and (2) the Plaintiff did not receive a full and fair hearing because the ALJ failed to take careful consideration of the evidence pursuant to 20 C.F.R. § 404.951 and 20 C.F.R. § 404.953. (Pl.'s Memo in Supp. Of Mot. Summ. J. "Pl.'s Mem." at 5-6.) Defendant argues in opposition that the Commissioner's final decision is supported by substantial evidence and should therefore be affirmed. (Def.'s Memo in Supp. Mot. Summ. J. "Def.'s Mem." at 6.)

**1.   The ALJ properly applied the Medical Vocational Guidelines in making his disability determination.**

The Plaintiff argues that due to his nonexertional impairment, the Medical-Vocational Guidelines ("Grids") cannot be applied to deny benefits because they "do not adequately describe an individual who suffers from a severe mental impairment." (Pl.'s Mem. at 5.) Particularly, the Plaintiff asserts that the ALJ did not consider the distinction between his exertional and nonexertional impairments. (Pl.'s Mem. at 5.) As a result, the Plaintiff asserts that the ALJ did not sufficiently support his conclusion that there is a significant number of jobs in the national economy that the Plaintiff was capable of performing because he did not consider Vocational Expert ("VE") testimony. (Pl.'s Mem. at 5.)

Prior to determining whether the Grids apply at the fifth step of the analysis, an ALJ must first determine the claimant's RFC. 20 C.F.R. § 404.1569; SSR 83-10. Based on the RFC

determination, the ALJ must then consult the Grids to determine if the claimant meets a rule (or Listing) in the Grids. 20 C.F.R. § 404.1569; SSR 83-10. The Grids categorize jobs by their physical-exertion requirements,[6] namely, sedentary,[7] light,[8] medium,[9] heavy, and very heavy. See SSR 83-10. There are numbered tables for sedentary, light, and medium level (tables 1,2, and 3, respectively), and a specific rule for the heavy and very heavy levels (rule 204.00). SSR 83-10; 20 C.F.R. Pt. 404, Subpt. P, App.2. Based on a claimant's RFC, the ALJ must first determine which table to apply, i.e., if the claimant's RFC limits him to a sedentary exertional level, then Table No.1 is the appropriate measure. Next, in order to evaluate step five, based on the claimant's age, education, and previous work experience, the rule directs a finding of "disabled" or "not disabled." 20 C.F.R. §§ 404.1520(g), 416.920(g), 404.1569, 416.969; 20 C.F.R. pt. 404, Subpt. P, app.2, § 200(a). However, since the utilization of the Grids is predicated on the claimant suffering from only exertional limitations, the Grids do not "direct a factual conclusion of disabled or not disabled" if the claimant suffers solely from nonexertional limitations. § 404.1569a(c)(2); 20 C.F.R. pt. 404, Subpt. P, app.2, § 200(a).

---

[6] A claimant's exertional limitation determines the proper exertional level for the claimant's situation. See SSR 83-10. An exertional limitation is an impairment-caused limitation that affects ones capability to perform an exertional activity (strength activity) such as sitting, standing, walking, lifting, carrying, pushing, and pulling. SSR 83-10.

[7] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools…Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a).

[8] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighting up to ten pounds…a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b).

[9] "Medium work involves listing no more than 50 pounds at a time with frequent lifting or carrying of objects weighting up to 25 pounds." 20 C.F.R. § 404.1567(c).

8

The reason for this rule is that nonexertional limitations may still limit a claimant's ability to perform a full range of unskilled occupations at a given exertional level. Thus, where a claimant suffers "only" exertional limitations, the ALJ consults the Grids to determine eligibility for benefits. See Walker v. Bowen, 889 F.2d 47, 49 (4th Cir. 1989); Cooper v. Sullivan, 880 F.2d 1152, 1155 (9th Cir. 1989). For solely nonexertional limitations, however, the ALJ must consider of all facts in the case "in accordance with the definitions and discussions of each factor in the appropriate sections of the regulations," and consider the rules in Appendix 2 for specific case situations. 20 C.F.R. pt. 404, Subpt. P, app.2, § 200(a); 20 C.F.R. § 416.969a(c)(2). Even though the application of the Grids cannot determine whether a claimant is disabled for solely nonexertional limitations, the Grids can still provide a "framework" to guide the ALJ in the decision making process. 20 C.F.R. pt. 404, Subpt. P, app.2, § 200(d). If an exertional limitation based on an individual's age, education, and work experience is similar to the factors of a Grid rule, "the adjudicator then has a frame of reference for considering the jobs or types of work precluded by other, nonexertional impairments in terms of numbers of jobs remaining for a particular individual." Id.

If a claimant suffers from both exertional and nonexertional limitations, then the ALJ must first consult the Grids to determine whether a rule directs a finding of disabled based on strength limitations alone. See 20 C.F.R. Pt. 404, Subpt. P, App. 2, Table 1, § 200.01(e)(2); SSR 82-56 at 7. If the strength requirements alone do not indicate that a claimant is disabled, then the same Grid rules apply to the individual's age, education, and work experience "as a framework for consideration of how much the individual's nonexertional limitations further erode the occupational job base." 20 C.F.R. §§ 404.1569a; 416.969a; 20 C.F.R. pt. 404, Subpt. P, app.2, § 200(e)(2); SSA 83-14; SSR 85-15; SSR 82-56. For example, when an individual has a particular

9

nonexertional limitation that has minimal affect on his/her exertional occupational base, the claimant's circumstances approximate the criteria of a grid rule sufficient to direct a finding of "not disabled." SSR 84-14.

Here, the Plaintiff's depressive disorder and substance abuse are considered nonexertional impairments (20 C.F.R. § 404.1569a) and mental, nonexertional impairments may limit exertional capacity by affecting strength demands. SSR 83-14; SSR 96-8p. Even though the ALJ acknowledged that the Plaintiff does not have a stated physical impairment[10], the ALJ also found that his "history of alcohol, with residual fatigue" created a physical exertional impairment that limited Plaintiff to engaging in only medium work. (R. at 19.) Thus, the Plaintiff suffered from both nonexertional and exertional limitations that nevertheless permits the application of the Grids as a "framework." SSR 85-15; 20 C.F.R. § 404.1569a(d).

Accordingly, the ALJ only applied the Grids as a "framework" in determining that Plaintiff was "not disabled" pursuant to the Act. More specifically, the ALJ properly applied Grid Rule 203.29 to Plaintiff's exertional limitations, finding that if Plaintiff could perform medium work, considering his age, education, and work experience, he would be found "not disabled."[11] (R. at 20.) By identifying Grid Rule 203.29, the ALJ determined that Plaintiff would be found "not disabled" on exertional limitations alone. Nevertheless, the ALJ proceeded to apply the Grids as a "framework" in order to determine how much of Plaintiff's nonexertional limitations further eroded his ability to perform medium work. Normally, in a situation involving

---

[10] The ALJ noted that Plaintiff could lift up to 50 pounds, and had no limitations with standing, sitting, walking, or using his upper extremities for any type of reaching. (R. at 19.)

[11] Grids rule 203.29 applies to a younger individual who have at least a high school education, but which does not provide for direct entry into skilled work. The individual also has previous work experience that is skilled or semiskilled, but with such skills not being transferable. The decision based on such factors must be "not disabled."

10

a combination of exertional and nonexertional limitations, an ALJ would only be required under the Act to use the Grids to evaluate how the claimant's nonexertional limitations would reduce the number of unskilled, medium jobs that the claimant could perform exertionally. SSR 83-14. However, the ALJ expanded his analysis here by finding that Plaintiff's nonexertional limitations did not affect Plaintiff's ability to do unskilled medium work because he was able "to perform the mental activities generally required by competitive work activity, including the ability to understand, remember and carry out simple job instructions and the capacity to respond appropriately to supervisors and coworkers."[12] (R. at 20.) As a result, the ALJ found that even if Plaintiff's nonexertional limitations were only evaluated, he would still be found "not disabled." (R. at 20.) As such, the ALJ concluded that Plaintiff's exertional and nonexertional capabilities related to age, education, and work experience could not severely limit the number of jobs in the national economy that Plaintiff could perform. SSR 85-15. The ALJ's findings are supported as well by the medical opinions that are of Record (Dr. Welby, Dr. May, and Dr. Olson). (R. at 198-201, 232-236, 259-261.) The ALJ specifically placed controlling weight on Dr. Olson's opinion as the Plaintiff's treating physician.[13] (R. at 17-18.)

Contrary to the Plaintiff's contention, the ALJ clearly distinguished exertional from nonexertional impairments. (R. at 19, 20.) On two separate occasions, the ALJ noted physical exertional impairments for the Plaintiff, but then he also analyzed Plaintiff's nonexertional

---

[12] The ALJ utilized language from SSR 85-15, which involves a more detailed analysis applied to claimants with solely nonexertional impairments.

[13] If medical opinions are inconsistent internally with each other, or other evidence, the ALJ must evaluate the opinions and assign them respective weight to properly analyze the evidence involved. 20 C.F.R. 416.927(c)(2), (d). A treating physician's opinion must be given controlling weight if it is well supported by medically-acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record. Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996); 20 C.F.R. 416.927(d)(2); SSR 96-2p.

impairments. (R. at 19, 20.) Furthermore, the ALJ explains the effect exertional and nonexertional impairments have on the application of the Grids. (R. at 20.) Therefore, the ALJ properly determined that Plaintiff's nonexertional limitations do not erode his exertional ability to perform medium work, resulting in a finding of "not disabled."

The remaining issue is whether the Plaintiff's combination of exertional and nonexertional limitations required the testimony of a VE. Plaintiff asserts that, absent the testimony of a VE, the ALJ could not conclude that Plaintiff could perform a significant number of jobs existing in the national economy by application of the Grids. (Pl.'s Memo at 5.) However, an ALJ is not always required to consider testimony of a VE in order to find a claimant "not disabled" when the claimant has both exertional and nonexertional limitations. SSR 84-14; 20 C.F.R. §§ 404.1569a, 416.969a; Appendix 2, Subpt P, Part 404, § 200.00(e), See Campbell v. Barnhart, 2002 WL 32595046, *14 (E.D. Va. Aug. 15, 2002) (the use of a vocational expert is not "ordinarily" required). If Plaintiff's nonexertional limitations have a minimal effect on his exertional occupational base, then a finding directed by the Grids is sufficient, and testimony by a VE is unnecessary. SSR 83-14; Eason v. Astrue, No. 2:07-cv-00030-FL, 2008 WL 4108084, at *5 (E.D.N.C. Aug. 29, 2008) (citations omitted). Although use of a VE is not required in "obvious" cases, it "may be necessary" in complex cases. SSR 84-14; 20 C.F.R. §§ 404.1566(e), 416.966(e). For example, unlike situations involving mental impairments or substance abuse, substantial reliance on claimant testimony for nonexertional pain limitations makes the use of a VE necessary. Walker v. Bowen, 889 F.2d 47, 49-50 (4th Cir. 1989); See Negrete v. Astrue, No. 3:08cv276, 2008 WL 5381347 (E.D. Va. Dec. 23, 2008). The proper inquiry is whether an individual's nonexertional limitation "affects an individual's residual functional capacity to perform work of which he is exertionally capable." Id. (clarifying Grant v. Schweiker, 699 F.2d

189 (4th Cir. 1983)). Here, the ALJ properly applied the Grids to Plaintiff's exertional limitations before determining that his nonexertional limitations did not further erode his ability to perform medium work. (R. at 20.) Therefore, VE testimony was unnecessary because Plaintiff's exertional and nonexertional limitations fell within the Grids, SSR 83-15, and SSR 83-14.

Moreover, when the Grids are properly used, they constitute the required administrative notice and preclude the need to solicit the opinion of a VE in any event. Heckler v. Campbell, 461 U.S. 485 (1983). The types of factual issues that are determined by proper use of the Grids are general enough that the Grids allow for resolution of those factual issues without the necessity of vocational expert evidence. Id. It is this Court's conclusion and recommendation, therefore, that the utilization of the Grids as a "framework," without the additional testimony of a VE, was appropriate in this case.

**2. The Plaintiff received a full and fair hearing as the ALJ carefully considered all of the evidence in the Record.**

The Plaintiff further asserts that the ALJ did not make "careful consideration of the evidence" in making his disability determination pursuant to the requirements of 20 C.F.R. § 404.951 and 20 C.F.R. § 404.953. (Pl.'s Memo at 6.) In support of his argument, the Plaintiff cites statements made by the ALJ in written instructions to his decision writer.[14] (Pl.'s Memo at 6.) The Plaintiff asserts that due to these adversarial, "unfavorable instructions," he did not receive a full and fair hearing. (Pl.'s Memo at 6.); 20 C.F.R § 404.900(b).

---

[14] The statements cited by the Plaintiff in support of his contention include: "I might not have covered every piece of evidence, allegation, exhibit or impairment," "…feel free to list other [medically determinable impairments] if you find them," and the Plaintiff "cannot have a valid diagnosis of a mental condition with someone actively using ETOH and cocaine."

13

Of course, claimants are entitled to a full and fair hearing of their claims. See Sims v. Harris, 631 F.2d 26, 27 (4th Cir. 1981). If the Court finds that a full and fair hearing was not administered, the Court must remand the case to the Social Security Commissioner for a more complete and fair analysis. See id. Accordingly, prior to the issuance of a final opinion, an ALJ must "make a complete record of the hearing proceedings." 20 C.F.R. § 404.951. Furthermore, the ALJ decision must be based only on evidence offered at the hearing or included in the record. 20 C.F.R. §§ 404.953(a), 416.1453(a). And, of course, the ALJ must explain his findings in accepting or rejecting evidence. 20 C.F.R. § 404.953(a); King v. Califano, 615 F.2d 1018 (4th Cir. 1980).

Here, the ALJ's decision to accept or reject evidence was thoroughly explained in his ruling, and was based on evidence contained in the record or presented during the hearing. (R. at 11-20.) Although the Plaintiff alleges that he did not receive a fair hearing based on the instructions to the ALJ's decision writer, he fails to provide any additional evidence that was not addressed at the hearing, or in the ALJ opinion. There is also no precedent or regulation that states that a court can review instructions an ALJ directs to a decision writer as evidence of an unfair hearing. Moreover, in prefacing the notes to the decision writer, the ALJ here states: "these are my basic thoughts…if you are unable to fill in the missing pieces or need specific guidance, see me." It is not for a court to inquire into internal staff directions of an ALJ, but to examine the final disability decision as the final determination of the ALJ. In fact, the statements in the instructions that the Plaintiff bases his arguments on are not supported by the ALJ's final decision.[15] Accordingly, the Court recommends a finding that the ALJ's conclusions are based

---

[15] The ALJ's statement in his instructions to the decision writer that the Plaintiff could not have a valid mental condition when actively engaging in substance abuse is inconsistent with

14

on proper consideration of the evidence, and therefore, the Plaintiff was provided with a full and fair hearing.

## V. CONCLUSION

Based on the foregoing analysis, it is the recommendation of this Court that Plaintiff's motion for summary judgment (docket entry no. 11) and motion for remand (docket entry no. 12) be DENIED; that Defendant's motion for summary judgment (docket entry no. 15) be GRANTED; and, that the final decision of the Commissioner be AFFIRMED.

Let the Clerk forward a copy of this Report and Recommendation to the Honorable Henry E. Hudson and to all counsel of record.

## NOTICE TO PARTIES

**Failure to file written objections to the proposed findings, conclusion and recommendations of the Magistrate Judge contained in the foregoing report within ten (10) days after being served with a copy of this report may result in the waiver of any right to a <u>de novo</u> review of the determinations contained in the report and such failure shall bar you from attacking on appeal the findings and conclusions accepted and adopted by the District Judge expect upon grounds of plain error.**

_____/s/_____
Dennis W. Dohnal
United States Magistrate Judge

Date: July 14, 2009
Richmond, Virginia

---

the ALJ's finding that the Plaintiff has a severe mental impairment, and that his physical impairment resulted from his alcohol abuse. (R. at 19.)